ORDERED.

**Dated:  December 04, 2019**

Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re:                                                     Case No.: 3:16-bk-04530-JAF

MATTHEW ORTMAN,                       Chapter 11

Debtor.

_____/

## ORDER CONFIRMING PLAN

THIS CASE came on for consideration on November 27, 2019 of the Debtor's Amended Plan of Reorganization (Doc. 182) (the "Amended Plan"), filed by the Debtor Matthew Ortman ("Ortman") on August 14, 2019.  A confirmation hearing was held on October 10, 2019 at 10:00 a.m. (the "Confirmation Hearing"), during which time the Court found that the requirements of 11 U.S.C. § 1129(a)(8) and (11) had not been met, and required that Ortman timely file cramdown motions with fourteen (14) days' negative notice (*see* Doc. 196).  Such motions were filed on October 15, 2019 (*see* Docs. 193 and 194), and the notice period expired without any objections or responses.  Having considered the record, and heard arguments of counsel at the hearing, and finding all the provisions of 11 U.S.C. § 1129 have been satisfied and the treatment of creditors under the Plan being fair and equitable, and based on the agreement of the parties, it is

**ORDERED:**

1.      The Amended Plan is confirmed.  A copy of the Confirmed Plan is attached hereto as **EXHIBIT A**.

2.      Pursuant to the terms of the Amended Plan as confirmed, Matthew Ortman will be discharged from any debt that arose before confirmation of the Amended Plan, upon satisfaction of all requirements of the Amended Plan.

3.      The reorganized debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as this Bankruptcy Court enters a final decree closing this Chapter 11 case, administratively closes this case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case.

4.      After confirmation, pursuant to 11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5), the reorganized debtor shall file with the Bankruptcy Court a financial report or statement of disbursements for each quarter (or portion thereof) that this Chapter 11 case remains open, in a format prescribed by the United States Trustee.

5.      Ortman shall file with the Court MORs for each quarter (or portion thereof) that this case remains open, in a format prescribed by the Trustee.

6.      Upon Substantial Consummation of the Amended Plan under 11 U.S.C. § 1101(2), Ortman may seek by motion to administratively close this case.

7.      Upon completion of all payments under the Amended Plan, Ortman may move to reopen this case, without the necessity of a filing fee, for the purpose of obtaining a discharge and entry of a final decree.

8.      Secured creditors shall retain any lien on property in which the estate has an interest to the extent of the value of such creditor's interest in the estate's interest in such property, or as

agreed between the parties in the Amended Plan.  Except as expressly modified by the Amended Plan, stipulation, or this Order, all terms of the loan documents shall remain in full force and effect.

9.      Any objection filed by a creditor which was not prosecuted at the confirmation hearing is deemed withdrawn and/or overruled by entry of this Order.

10.      The Court retains jurisdiction to enforce the terms of this Order.

11.      The Court retains jurisdiction to consider any fee applications filed by Ortman's counsel.  Counsel for Ortman will file all final fee applications (for counsel, the accountant, and/or the Financial Fiduciary) within ninety (90) days of the date of this Order.

12.      The Court will not schedule a Status Conference at this time, but reserves the right to schedule a Status Conference in this case in the future should the need arise.

13.      The automatic stay is terminated as of confirmation of the Amended Plan.

Attorney Adina L. Pollan is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re:                                             Case No.: 3:16-bk-04530-PMG

MATTHEW ORTMAN,                        Chapter 11

Debtor.

_____/

## DEBTOR'S AMENDED[1] PLAN OF REORGANIZATION

Comes now, Matthew Ortman (the "Debtor"), as Debtor and Debtor-in-Possession, and

proposes the following Amended Plan of Reorganization.

### PRELIMINARY MATTERS

1.      This is the first amended chapter 11 plan of the Debtor.

2.      This amended plan provides for satisfaction of claims as follows:

   a.      All administrative claims, including those of the U.S. Trustees for fees, prior

   to or before the Effective Date.

   b.      Priority Claims will be paid in full either on or before the Effective Date, or

   within the first twelve (12) months following the Effective Date.

   c.      The commencement of payments to creditors holding general unsecured

   claims shall be fifteen (15) months from the Effective Date.

### ARTICLE 1
### DEFINITIONS

1.1.    **"Administrative Claim"** means a Claim for costs and expenses of administration

allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the

---

[1] This is the first amended plan of the Debtor, in that the terms have substantively changed.  An Amended
Disclosure Statement was filed on March 26, 2018, which only made formatting changes.

actual and necessary costs and expenses incurred after the Petition Date to preserve the Estate and operate the business of the Debtors, including Claims based on liabilities incurred by the Debtors in the ordinary course of their business; (b) Professional Fee Claims (including Professional Fee Claims by the Debtor's counsel); and (c) U.S. Trustee Fees.

1.2.     **"Administrative Claim Bar Date"** means the date established by Local Rule 3071-1 by which all requests for payment of Administrative Claims are required to be filed with the Bankruptcy Court.

1.3.     **"Administrative Expense"** shall mean any cost or expense of administration of the Chapter 11 case allowed under Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

1.4.     **"Allowed"** shall mean any such Claim, proof of which was timely and properly filed or, if no proof of claim was filed, which has been or hereafter is listed by the Debtor on his schedules as liquidated in amount and not disputed, contingent or unknown as to value, and, in either case, a Claim as to which no objection to the allowance thereof has been filed on or before the Confirmation Date or such other applicable period of limitation fixed by the Plan.  Unless otherwise specified herein or by order of the Court, an "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest on such Claim for the period from and after the Petition Date.

1.5.     **"Allowed Class . . . Claim"** means an Allowed Claim in the particular Class described in this Plan.

1.6.     **"Assets"** means all property of the Estate within the meaning of § 541 of the Bankruptcy Code, of any nature whatsoever, including, without limitation, all property, real and personal, tangible and intangible, wherever situated, as such property exists on the Effective Date or thereafter.

1.7.    **"Bankruptcy Case"** means the Chapter 11 case pending for the Debtor in the Bankruptcy Court.

1.8.    **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended, as applicable to the Bankruptcy Case.

1.9.    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, including the United States Bankruptcy Judge presiding in the Debtor's Chapter 11 case.

1.10.    **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to the Bankruptcy Case.

1.11.    **"Bar Date"** means the applicable bar date by which a proof of Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including a Bar Date Order and the Confirmation Order.

1.12.    **"Bar Date Order"** means any order of the Bankruptcy Court establishing Bar Dates for filing proofs of Claims in the Bankruptcy Case.

1.13.    **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.14.    **"Cash"** means the legal tender of the United States of America.

1.15.    **"Claim"** shall mean a duly listed or timely filed claim which is Allowed and ordered paid by the Court.

1.16.    **"Class"** means a class of Claims as described in Article II.

1.17.    **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.18.   **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

1.19.   **"Confirmation Hearing"** means the hearing(s) held by the Bankruptcy Court concerning Confirmation of this Plan, including all hearings under § 1129 of the Bankruptcy Code, as such hearings may be continued from time to time.

1.20.   **"Confirmation Order"** means the order or orders of the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

1.21.   **"Creditor"** means the holder of a Claim.

1.22.   **"Creditors"** shall mean all the Debtor's creditors holding claims for secured and unsecured debts, liabilities, demands or claims of any character whatsoever.

1.23.   **"Debtor"** shall mean Matthew Ortman.

1.24.   **"Distribution"** shall mean funds to be paid or instruments to be issued to holders of Claims and Interests pursuant to this Plan.

1.25.   **"Distribution Date"** shall mean the dates upon which Distributions may be made pursuant to this Plan.

1.26.   **"Effective Date"** shall be that date on which the order confirming the Plan becomes final.

1.27.   **"Entity"** means an individual, partnership, corporation, joint-stock company, unincorporated company or association, business trust, limited partnership, limited liability company or other business entity.

1.28.   **"Estate"** means the estate created for the Debtor in the Bankruptcy Case pursuant to § 541 of the Bankruptcy Code.

1.29.    **"Executory Contract or Unexpired Lease"** means a contract or lease to which the Debtor is a party that is subject to assumption, assumption, and assignment or rejection under § 365 of the Bankruptcy Code.

1.30.    **"Final Order"** means an order or judgment of the Bankruptcy Court as entered on the docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Trustee, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired.  If any provision of this Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Trustee may waive such requirement in accordance with this Plan with Court approval.

1.31.    **"Firm"** shall mean Pollan Legal, and any attorney, paralegal, agent or assign of Pollan Legal.

1.32.    **"General Unsecured Claim"** means an Unsecured Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

1.33.    **"Petition Date"** means December 14, 2016.

1.34.    **"Post-Confirmation Administrative Claim"** shall mean a Claim for services rendered or expenses incurred after the Effective Date in connection with this Bankruptcy Case.

1.35.    **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended or supplemented in the future.

1.36.    **"Priority Claim"** means a Claim against the Debtor that is entitled to priority in payment pursuant to § 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

1.37.    **"Priority Tax Claim"** means a Claim arising under federal, state or local Tax laws that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

1.38.    **"Professional"** means any professional employed in the Bankruptcy Case pursuant to §§ 327 or 1103 of the Bankruptcy Code, or any Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to § 503(b)(4) of the Bankruptcy Code.

1.39.    **"Professional Fee Claims"** mean the Claims of (a) any Professional in the Bankruptcy Case pursuant to §§ 330 or 1103 of the Bankruptcy Code; or (b) any Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to §§ 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

1.40.    **"Property"** means the real property located at 1264 N. Burgandy Trail, Jacksonville, FL 32259.

1.41.    **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor, as required by § 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

1.42.    **"Secured Claim"** means a Claim against the Debtor for extensions of credit to the Debtor or an Entity of the Debtor that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the holder of such Claim's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to §§ 506(a) and, if applicable,

6

1129(b) of the Bankruptcy Code.

1.43.   **"Secured Creditors"** shall mean all creditors who hold a lien, security interest, or other encumbrance properly perfected as required by law with respect to property owned by the Debtor.

1.44.   **"Tax"** means any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority.

1.45.   **"U.S. Trustee Fees"** means all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

## ARTICLE 2
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**Summary.**   The categories of Claims and interests listed below are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan:

| | |
|---|---|
| Class 1: | Allowed Administrative Expenses. |
| Class 2: | Allowed Secured Claim 6-1 of Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not Individually but as Trustee for Carlsbad Funding Mortgage Trust; First Mortgage on the Property. |
| Class 3: | Allowed Secured Claim of Carbucks of Georgia, Inc.; Lien on the Debtor's Vehicle. |
| Class 4: | Secured Claim 5-1 of Julington Creek Planation POA, Inc.; Statutory Lien. |
| Class 5: | Allowed Tax Claim 3-2 of the Internal Revenue Service; Taxes. |
| Class 6: | Allowed Unsecured Claims. |

2.1.   **Class 1: Allowed Administrative Expenses.**   All Allowed Administrative Expenses for which application is filed prior to the Effective Date, and owing at the time of Confirmation, will be paid as a condition to Confirmation.   The funds will come from Cash on hand as of the Effective Date and future income.   At the time of the preparation of this Plan, there is one post-petition obligation that has incurred that is not being treated under the Plan.   U.S. Trustee fees are being paid on a current basis.

      2.1.1.   It is anticipated that the U.S. Trustee fee assessment for the calendar quarter at confirmation shall not exceed $650.00.   The Debtor shall continue to pay fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree or order administratively closing this Bankruptcy Case, or enters an order either converting this Bankruptcy Case to a case under Chapter 7 or dismissing this case pursuant to 11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5).

      2.1.2.   It is anticipated that additional legal fees and costs shall be approximately $16,000.00.[2]   In order to pay down these ongoing post-petition obligations, the Court entered an Order Approving Interim Application for Compensation and Request for Allowance of Administrative Expense (Doc. 139) on September 27, 2018, approving fees and costs in the amount of $13,287.13, to be paid in monthly installments of $500.00.   Since that time, the Debtor has paid $8,927.32, leaving a remaining balance of $4,359.81.   The Debtor has also incurred additional fees and costs in the amount of $9,107.32, for a total amount due of $13,467.13.   Any approved fees remaining due and unpaid after the

---

[2] Such legal fees are subject to review by the Court for reasonableness.

Effective Date (and upon approval by the Court of any Final Fee Application),

shall be paid by the Debtor, without interest, in monthly installments as agreed

upon by the Debtor and the Firm over a period not to exceed twelve (12) months

from the Effective Date.

2.1.3.   This class of claims is not impaired under the Plan.

2.2.     **Class 2: Allowed Secured Claim 6-1 of Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not Individually but as Trustee for Carlsbad Funding Mortgage Trust's; First Mortgage on the Property.** Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not Individually but as Trustee for Carlsbad Funding Mortgage Trust's ("Wilmington") has filed Secured Claim 6-1 (the "Wilmington Claim") in the amount of $586,138.84, with $90,973.18 in arrears as of the Petition Date (the "Allowed Arrearage"), representing a secured first mortgage on the Debtor's primary residence (the "Wilmington Mortgage"), owned jointly with Debtor's non-filing spouse, located at the Property.  Wilmington originally did not file an unsecured claim in relation to the Wilmington Mortgage before the claims deadline and as such would not be entitled to voting or distributions as a Class 6 unsecured creditor. On March 21, 2018, the Court entered an Order Extending Mortgage Modification Mediation Deadlines (Doc. 112).  The Debtor and Wilmington participated in a mediation on March 13, 2019, which did not resolve the issues regarding the Property.   However, pursuant to an agreement between the Debtor and Wilmington, Wilmington has agreed to file an amended claim providing for bifurcated treatment of its claim – a secured portion and an unsecured portion.  The unsecured portion will enable Wilmington to voting and distributions as a Class 6 unsecured creditor.

2.2.1.   The Debtor intends to surrender the Property to Wilmington in full satisfaction
of its claim through a deed in lieu of foreclosure, consent to foreclosure or other

such method as the Debtor and Wilmington may agree.

    2.2.2.   To the extent Wilmington files an amended claim with an unsecured portion, the general unsecured portion of the Wilmington Claim shall be subject to treatment as an Allowed Unsecured Claim subject to administration under Class 6 of the Plan.

    2.2.3.   This class of claims is impaired.

    **2.3.**    **Allowed Secured Claim of Carbucks of Georgia, Inc.; Lien on the Debtor's Vehicle.**  Carbucks of Georgia, Inc. ("Carbucks") has filed Secured Claim 7-1 (filed after the Bar Date) in the amount of $16,000.00, with $12,000.00 as an Unsecured Claim (the "Carbucks Claim").  While filed after the Bar Date, the Carbucks Claim is the same as outlined in the Debtor's Schedules, which is secured by the 2011 Infiniti QX56 (the "Infiniti") of the Debtor.  The Debtor intends to retain the Infiniti and proposes to pay Carbucks according to the following terms:

    2.3.1.   The Debtor shall repay the secured portion of the Carbucks Claim, $16,000.00, amortized over 36 months with 3.25% interest, for a monthly payment of $467.06.  No pre-payment penalty shall be assessed on this Class.

    2.3.2.   The general unsecured portion of the Carbucks Claim shall be subject to treatment as an Allowed Unsecured Claim subject to administration under Class 6 of the Plan.

    2.3.3.   This class of claims is impaired.

    **2.4.**    **Secured Claim 5-1 of Julington Creek Planation POA, Inc.; Statutory Lien.**  Julington Creek Planation POA, Inc.'s ("JCP") has filed Secured Claim 5-1 (the "JCP Claim") in the amount of $4,072.47, which is allegedly secured by virtue of Fla. Stat. § 720.3085.  However, JCP did not attach to its claim any proof of compliance with the statute, namely, a notice of intent

to file a claim of lien, that the claim of lien is proper, or a notice of intent to foreclose lien. JCP also does not proffer any proof that the attorneys' fees claimed are reasonable. Specifically, the amount of fees are more than half of the amount of the JCP Claim. The Debtor proposes to pay JCP according to the following terms:

2.4.1. As more fully outlined in the treatment of Class 2 above, the Debtor will be surrendering his interest in the Property and such surrender will be in full satisfaction of the JCP Claim on the Property.

2.4.2. At this time, it is unclear if the Property is secured above and beyond the Wilmington Claim, so it is unclear if the JCP Claim is fully secured or unsecured. To the extent all or a portion of the JCP Claim is unsecured, then the entire Claim or the unsecured portion thereof shall be subject to treatment as an Allowed Unsecured Claim subject to administration under Class 6 of the Plan.

2.4.3. This class of claims is impaired.

2.5. **Allowed Tax Claim 3-2 of the Internal Revenue Service; Taxes.** The Internal Revenue Service (the "IRS") has filed Tax Claim 3-2 (the "IRS Claim"). The IRS Claim consists of a secured portion in the amount of $6,624.13, and a general unsecured portion in the amount of $190,570.17. The Debtor proposes to pay the IRS according to the following terms:

2.5.1. The Debtor shall pay the secured portion of the IRS Claim, $6,624.13, amortized over 36 months with 4% interest, for a monthly payment of $195.57. No pre-payment penalty shall be assessed on this Class.

11

2.5.2.  The general unsecured portion of the IRS Claim shall be subject to treatment as an Allowed Unsecured Claim subject to administration under Class 6 of the Plan.

2.5.3.  This class of claims is impaired.

2.6.  **Class 6: Allowed Unsecured Claims.** Allowed Unsecured Claims total approximately $225,000.00 and are listed in the table below:[3]

| Unsecured Creditor | Claim # | Total Unsecured |
|---|---|---|
| Capital One Bank (USA), N.A. by American InfoSource LP as agent | 1 | $392.91 |
| OneMain | 2 | $8,638.50 |
| IRS | 3-2 | $190,570.17 |
| Vystar Credit Union | 4 | $4,712.81 |
| Julington Creek Plantation POA, Inc. | 5 | Unknown |
| Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not Individually but as Trustee for Carlsbad Funding Mortgage Trust | 6 | Unknown |
| Carbucks of Georgia, Inc. | 7 | $12,000.00 |
| ERC/Enhanced Recovery Corp. | NCF | $203.00 |
| Portfolio Recovery Associate | NCF | $7,560.00 |
| Portfolio Recovery Associate | NCF | $1,775.00 |

As more fully discussed in the Disclosure Statement approved by the Court on April 30, 2018 (*see* Doc. 123), if the Debtor's Assets were liquidated, nothing would be available for distribution to this class of creditors under a Chapter 7 bankruptcy administration.  The Debtor proposes to pay this class of unsecured creditors $8,000.00 with no interest as follows:

2.6.1.  Class 6 creditors shall receive their pro rata distribution under this class in eight (8) equal quarterly payments.

2.6.2.  These payments shall begin on the first (1st) day of the fifteenth (15th) calendar

---

[3] There is no distribution to creditor Ameriprise Financial Service, which did not file a Claim.  This claim is listed as disputed on Schedule E/F, and as such, the Debtor does not plan on paying this Claim.

month following the Effective Date, and continue quarterly on the first (1st) day

of the eighteenth (18th), twenty-first (21st), twenty-fourth (24th), twenty-

seventh (27th), thirtieth (30th), thirty-third (33rd), and thirty-sixth (36th)

thereafter until the sixty (60) payments are made or the $8,000.00 is paid in full.

The total sum of these quarterly payments shall be $1,000.00.

2.6.3.   The Debtor shall have the right to prepay this class in full or in part at any time

without penalty.

2.6.4.   The Debtor shall have a 30-day grace period for all payments.

2.6.5.   This class of claims is impaired.

### ARTICLE 3
### MEANS FOR EXECUTION OF THE PLAN

3.1.   In order to provide adequate means for the Plan's execution the Debtor proposes:

(a)   Continuation and restructuring of the Debtor's financial affairs.

(b)   Curing or waiving any defaults.

(c)   Extension of a maturity date or change in an interest rate or outstanding securities.

(d)   Retention by the Debtor of certain estate property.

(e)   All payments called for by the Plan irrespective of the class of creditor will have a 30-day grace period unless otherwise provided for in the Plan.

(f)   The Debtor may prepay, in full or in part, any claim at any time before that claim's maturity date under the Plan without penalty.

(g)   Any debt that arose before the date of confirmation and any debt within the parameters of 11 U.S.C. § 1141(d)(1) will be discharged to the extent not provided for in the Plan or in the Order of Confirmation.

(h)     Except as otherwise provided in the Plan or in the Order Confirming the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

(i)     Except as provided in subsection 11 U.S.C. § 1141(d)(2) and (d)(3) and as otherwise provided in the Plan or in the Order Confirming the Plan, after confirmation of the Plan, the property dealt with by the Plan is free and clear of all claims and interests of creditors.

3.2.    All claims and causes of action in favor of the Debtor, including but not limited to the filing of objections to claims, are hereby reserved and retained to be prosecuted before and after confirmation, and the Debtor expressly reserves any rights and powers that the Debtor may enjoy as debtor-in-possession to be utilized after confirmation.

3.3.

(a)     Pursuant to 11 U.S.C. § 1141(a), all of the provisions of this Plan will bind all creditors of the Debtor, whether or not the claims or interests of such creditor is impaired under this Plan and whether or not such creditor has accepted this Plan.

(b)     Confirmation of this Plan will vest all of the property of the estate in the Debtor.

(c)     Except as otherwise provided in this Plan, after confirmation of this Plan, the property dealt with by this Plan shall be free and clear of all claims and interests of creditors, whether such claims are in the nature of consensual liens or involuntary liens, including judgment liens.

14

(d)     Pursuant to 11 U.S.C. § 1141(d)(5), completion of all payments under this Plan shall discharge the Debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in §502(g), §502(h), or §502(i) of the Bankruptcy Code, whether or not a proof of the claim based on such debt is filed or deemed filed under § 501 of the Bankruptcy Code, such claim is allowed under § 502 of the Bankruptcy Code, or the holder of such claim has accepted the Plan.

(e)     The Court may, however, upon motion and hearing, at its discretion administratively close this case without entry of a discharge until all payments under the Plan have been made.  Upon completion of all payments under the Plan, or as otherwise available to the Debtor under § 1141(d)(5)(B) of the Bankruptcy Code, the Debtor intends to file a motion to reopen the case for the limited purpose of obtaining a discharge.

(f)     The Debtor is not entitled to a discharge in this case until completion of all payments under the Plan or until such discharge is granted under § 1141(d)(5)(B) of the Bankruptcy Code.

## ARTICLE 4
## PROVISIONS FOR CONFIRMATION AND IMPLEMENTATION OF THE PLAN

4.1.    If there are multiple creditors in a class, the amounts distributed to each member of the class under the Plan shall be distributed on a pro-rata basis.

4.2.    The Debtor shall not be required to make a distribution to a creditor under the Confirmed Plan which is less than $10.00.

4.3.    **Liquidation Analysis.**

4.3.1.  Attached as **Exhibit A** is a liquidation analysis outlining all of the Debtor's

15

assets, liens and security interests in those assets, the Debtor's administrative expenses and the ultimate gross value to the Debtor's estate. Should the Debtor's assets be liquidated, there would be nothing left for unsecured creditors. Further, before distributions could be made to unsecured creditors, administrative expenses would first be paid from the gross proceeds. Based upon the current status of the case and work to be performed in the remaining administration of this case, it is anticipated that a total of $16,000.00 in legal fees would be incurred and owing before the Debtor's estate is fully administered. The end result is that if the Debtor's estate were to be liquidated, unsecured creditors would receive nothing.

4.3.2.  This Amended Plan shall pay administrative expenses in full, secured creditors the value of the collateral securing their respective claims with interest, and distribute the total of $8,000.00 to Allowed Unsecured Creditors under Class 6. Considering the limited assets to be liquidated and additional administrative expenses, all creditors of the estate stand to receive more under the proposed Plan than if the Debtor's assets were to be liquidated.

4.4.  **Means of Execution and Feasibility.** This Amended Plan provides that payments shall be made from the Debtor's income. Since case inception, the Debtor's Monthly Operating Reports show an average monthly income of $12,809.58 and average monthly expenses of $11,425.67. *See* Feasibility Model attached as **Exhibit B**. However, as the Personal Household Budget shows, attached as **Exhibit C**, the past seven (7) months show an increase in income to a monthly average of $15,254.80, with average monthly expenses of $13,918.35. Both Exs. C and D also show average Adjusted Gross Income ("AGI") of $1,383.91 and $1,336.45, respectively.

The Debtor's expenses will increase, however, due to the increased payments of administrative expenses (*i.e.*, attorney's fees) and payments to secured creditors (*i.e.*, the IRS and secured vehicle payment). Attached as **Exhibit D** is a Projected Budget of the next six (6) months. Keeping an average monthly income of $15,300.00, and all monthly expenses at a slightly reduced monthly average of $10,332.64 (including a reduced rent payment of $2,100.00), plus payment of all administrative expenses and secured claims, the Debtor's AGI will decrease to a monthly average of $84.03. Based on these models and projections, the Plan is feasible as proposed, and not likely to be followed by further reorganization or liquidation.

4.5. **Plan Payments.** Attached as **Exhibit E** is a chart of all payments to be made under this Amended Plan. The Debtor shall make four (4) equal payments in the amount of $1,995.97, followed by eight (8) equal payments in the amount of $1,995.96. For the next twenty-four (24) payments, the Debtor shall pay monthly $662.63, with the addition of eight (8) equal payments of $1,000.00 to be paid quarterly. These payments provide for payment of all administrative expenses and secured claims, with the addition of $8,000.00 to be paid to unsecured creditors. Taking the Debtor's AGI of $84.03 multiplied over sixty (60) months, the Debtor is required pursuant to 11 U.S.C. § 1129(a)(15) to pay $5,041.80. The Debtor shall make payments totaling $8,000.00, more than fulfilling the requirements of this provision.

4.6. **Claims Breakdown and Analysis.** Attached as **Exhibit F** is a complete breakdown of all of the creditors of the Debtor. To the extent that Julington Creek Plantation POA, Inc. and Wilmington file unsecured claims as provided in this analysis, each unsecured creditor shall receive its pro rata share of the $8,000.00, with distributions not provided for claims less than $10.00.

[Signature Page Follows]

17

Date: August 14, 2019.

**POLLAN LEGAL**

/s/ Adina L. Pollan
Adina L. Pollan, Esq.
Florida Bar No. 15639
apollan@pollanlegal.com
25 N. Market Street
Jacksonville, Florida 32202
Telephone (904) 475-2187
Facsimile (904) 562-1361

*Attorneys for the Debtor*

By: _____
    Matthew Ortman

# EXHIBIT A

**Liquidation**

| Asset | Value |
|---|---|
| Homestead | $357,945.00 |
| 2011 Infinit QX56 | $16,000.00 |
| 2009 BMW 328 I | $7,000.00 |
| Household Furnishings | $2,000.00 |
| TVs & Computer | $500.00 |
| Men's Clothing | $50.00 |
| Wedding Ring | $200.00 |
| Cash | $60.00 |
| Checking Account | $1,705.13 |
| Savings Account | $5.00 |
| **TOTAL ASSETS** | **$385,465.13** |

**Creditors**

*Secured*

| | |
|---|---|
| Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not Individually but as Trustee for Carlsbad Funding Mortgage Trust | $586,138.84 |
| Carbucks of Georgia, Inc. | $16,000.00 |
| Julington Creek Plantation POA, Inc. | $4,072.47 |
| IRS | $6,624.13 |
| **TOTAL SECURED/PRIORITY** | **$612,835.44** |

**Admin Expenses**

| | |
|---|---|
| Attorneys' Fees | $16,000.00 |
| **TOTAL ADMIN** | **$16,000.00** |

| | |
|---|---|
| ***TOTAL REMAINING FOR GENERAL*** | $0.00 |

# EXHIBIT B

**Feasibility Model**

| MOR | | Income | Expenses | Total |
|---|---|---|---|---|
| | Dec-16 | $14,423.93 | $12,581.98 | $1,841.95 |
| | Jan-17 | $17,962.92 | $16,750.91 | $1,212.01 |
| | Feb-17 | $8,873.24 | $11,277.48 | -$2,404.24 |
| | Mar-17 | $20,585.69 | $18,326.82 | $2,258.87 |
| | Apr-17 | $11,093.86 | $10,107.65 | $986.21 |
| | May-17 | $11,110.75 | $10,814.64 | $296.11 |
| | Jun-17 | $12,440.84 | $11,142.86 | $1,297.98 |
| | Jul-17 | $14,505.01 | $12,796.35 | $1,708.66 |
| | Aug-17 | $9,771.15 | $8,157.84 | $1,613.31 |
| | Sep-17 | $12,525.05 | $10,367.10 | $2,157.95 |
| | Oct-17 | $11,159.89 | $9,443.67 | $1,716.22 |
| | Nov-17 | $18,908.48 | $16,224.71 | $2,683.77 |
| | Dec-17 | $7,818.35 | $7,354.51 | $463.84 |
| | Jan-18 | $14,288.98 | $11,776.98 | $2,512.00 |
| | Feb-18 | $6,675.61 | $4,261.56 | $2,414.05 |
| | Mar-18 | $11,978.13 | $8,522.13 | $3,456.00 |
| | Apr-18 | $14,416.39 | $11,938.41 | $2,477.98 |
| | May-18 | $7,908.38 | $6,809.15 | $1,099.23 |
| | Jun-18 | $17,228.21 | $13,529.70 | $3,698.51 |
| | Jul-18 | $33,288.76 | $14,571.20 | $18,717.56 |
| | Aug-18 | $14,740.15 | $26,844.34 | -$12,104.19 |
| | Sep-18 | $14,583.60 | $11,824.43 | $2,759.17 |
| | Oct-18 | $15,957.25 | $13,395.94 | $2,561.31 |
| | Nov-18 | $17,434.77 | $13,908.88 | $3,525.89 |
| | Dec-18 | $16,486.59 | $15,827.62 | $658.97 |
| | Jan-19 | $18,784.13 | $16,228.15 | $2,555.98 |
| | Feb-19 | $12,501.45 | $10,679.45 | $1,822.00 |
| | Mar-19 | $24,103.23 | $20,292.11 | $3,811.12 |
| | Apr-19 | $18,344.79 | $16,418.63 | $1,926.16 |
| | May-19 | $6,037.34 | $8,304.28 | -$2,266.94 |
| | Jun-19 | $10,526.04 | $9,678.18 | $847.86 |
| **TOTAL** | | $446,462.96 | $390,157.66 | $56,305.30 |
| **AVERAGE** | | $12,809.58 | $11,425.67 | $1,383.91 |

# EXHIBIT C

**Personal Household Budget**

| | Month | Month | Month | Month | Month | Month | Month | Cumulative | Monthly |
|---|---|---|---|---|---|---|---|---|---|
| | Dec-19 | Jan-19 | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-20 | Total | Average |
| **Income** | | | | | | | | | |
| Salary | $16,486.59 | $18,784.13 | $12,501.45 | $24,103.23 | $18,344.79 | $6,037.34 | $10,526.04 | $96,257.53 | $15,254.80 |
| | | | | | | | | | |
| **Total Income** | $16,486.59 | $18,784.13 | $12,501.45 | $24,103.23 | $18,344.79 | $6,037.34 | $10,526.04 | $106,783.57 | $15,254.80 |
| | | | | | | | | | |
| **Expenses** | | | | | | | | | |
| Gifts | $0.00 | $0.00 | $0.00 | $1,000.00 | $0.00 | $0.00 | $0.00 | $1,000.00 | $142.86 |
| Food and Housekeeping | $6,578.91 | $7,156.68 | $2,895.65 | $9,228.15 | $3,169.20 | $1,475.27 | $4,187.92 | $34,691.78 | $4,955.97 |
| Household Repairs & Maintenance | $1,562.34 | $1,362.68 | $762.68 | $862.64 | $210.00 | $267.68 | $703.36 | $5,731.38 | $818.77 |
| Insurance | $438.53 | $0.00 | $0.00 | $669.14 | $328.55 | $416.00 | $0.00 | $1,852.22 | $264.60 |
| Medical/Dental Expenses | $299.84 | $541.31 | $395.99 | $551.02 | $0.00 | $0.00 | $0.00 | $1,788.16 | $255.45 |
| Mortgage Payment | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $0.00 | $14,400.00 | $2,057.14 |
| Travel & Entertainment | $751.70 | $457.36 | $731.94 | $1,368.22 | $823.91 | $2,322.21 | $806.75 | $7,262.09 | $1,037.44 |
| Tuition/Education | $1,120.38 | $1,214.38 | $1,970.88 | $1,208.00 | $5,400.76 | $80.00 | $2,399.94 | $13,394.34 | $1,913.48 |
| Utilities | $1,608.47 | $786.96 | $363.53 | $1,705.60 | $3,219.21 | $0.00 | $1,112.97 | $8,796.74 | $1,256.68 |
| Vehicle Expenses (fuel and maintenance) | $700.45 | $941.78 | $581.78 | $932.34 | $0.00 | $0.00 | $100.24 | $3,256.59 | $465.23 |
| Vehicle Secured Payment(s) | $367.00 | $367.00 | $367.00 | $367.00 | $367.00 | $367.00 | $367.00 | $2,569.00 | $367.00 |
| U. S. Trustee Quarterly Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $976.12 | $0.00 | $976.12 | $139.45 |
| Professional Fees (Legal, Accounting) | $0.00 | $1,000.00 | $210.00 | $1,000.00 | $500.00 | $0.00 | $0.00 | $2,710.00 | $387.14 |
| Other (attach schedule) | | | | | | | | $0.00 | $0.00 |
| | | | | | | | | | |
| **Total Household Expenses** | $15,827.62 | $16,228.15 | $10,679.45 | $20,292.11 | $16,418.63 | $8,304.28 | $9,678.18 | $98,428.42 | $13,918.35 |
| | | | | | | | | | |
| **Net Household Income/Expenses** | $658.97 | $2,555.98 | $1,822.00 | $3,811.12 | $1,926.16 | -$2,266.94 | $847.86 | $8,507.29 | $1,336.45 |

# EXHIBIT D

**Projected Budget**

| | Month Aug-19 | Month Sep-19 | Month Oct-19 | Month Nov-19 | Month Dec-19 | Month Jan-20 | Cumulative Total | Monthly Average |
|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | |
| Salary | $15,300.00 | $15,300.00 | $15,300.00 | $15,300.00 | $15,300.00 | $15,300.00 | $91,800.00 | $15,300.00 |
| | | | | | | | | |
| **Total Income** | $15,300.00 | $15,300.00 | $15,300.00 | $15,300.00 | $15,300.00 | $15,300.00 | $91,800.00 | $15,300.00 |
| | | | | | | | | |
| **Expenses** | | | | | | | | |
| Food and Housekeeping | $5,000.00 | $5,000.00 | $4,650.00 | $5,000.00 | $5,000.00 | $4,650.00 | $29,300.00 | $4,883.33 |
| Household Repairs & Maintenance | $820.00 | $820.00 | $775.00 | $820.00 | $820.00 | $775.00 | $4,830.00 | $805.00 |
| Insurance | $265.00 | $265.00 | $250.00 | $265.00 | $265.00 | $250.00 | $1,560.00 | $260.00 |
| Medical/Dental Expenses | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $1,500.00 | $250.00 |
| Rent | $2,100.00 | $2,100.00 | $2,100.00 | $2,100.00 | $2,100.00 | $2,100.00 | $12,600.00 | $2,100.00 |
| Travel & Entertainment | $1,100.00 | $1,100.00 | $900.00 | $1,100.00 | $1,100.00 | $900.00 | $6,200.00 | $1,033.33 |
| Tuition/Education | $1,950.00 | $1,950.00 | $1,800.00 | $1,950.00 | $1,950.00 | $1,800.00 | $11,400.00 | $1,900.00 |
| Utilities | $1,225.00 | $1,225.00 | $1,150.00 | $1,225.00 | $1,225.00 | $1,150.00 | $7,200.00 | $1,200.00 |
| Vehicle Expenses (fuel and maintenance) | $475.00 | $475.00 | $440.00 | $475.00 | $475.00 | $440.00 | $2,780.00 | $463.33 |
| Vehicle Secured Payment(s) | $467.06 | $467.06 | $467.06 | $467.06 | $467.06 | $467.06 | $2,802.36 | $467.06 |
| U. S. Trustee Quarterly Fees | $0.00 | $0.00 | $975.00 | $0.00 | $0.00 | $975.00 | $1,950.00 | $325.00 |
| Professional Fees (Legal, Accounting) | $1,333.34 | $1,333.34 | $1,333.34 | $1,333.34 | $1,333.34 | $1,333.34 | $8,000.04 | $1,333.34 |
| IRS (secured) | $195.57 | $195.57 | $195.57 | $195.57 | $195.57 | $195.57 | $1,173.42 | $195.57 |
| Other (attach schedule) | | | | | | | $0.00 | $0.00 |
| | | | | | | | | |
| **Total Household Expenses** | $15,180.97 | $15,180.97 | $15,285.97 | $15,180.97 | $15,180.97 | $15,285.97 | $91,295.82 | $10,332.64 |
| | | | | | | | | |
| **Net Household Income/Expenses** | $119.03 | $119.03 | $14.03 | $119.03 | $119.03 | $14.03 | $504.18 | $84.03 |

# EXHIBIT E

**Plan Payments**

| Payment Date | Plan Month | | Payment Amount | ATTY Fee | IRS | | Carbucks of GA | | |
|---|---|---|---|---|---|---|---|---|---|
| 9/1/2019 | 1 | | $1,995.97 | $1,333.34 | $195.57 | | $467.06 | | |
| 10/1/2019 | 2 | | $1,995.97 | $1,333.34 | $195.57 | | $467.06 | | |
| 11/1/2019 | 3 | | $1,995.97 | $1,333.34 | $195.57 | | $467.06 | | |
| 12/1/2019 | 4 | 4 at | $1,995.97 4 at | $1,333.34 | $195.57 | | $467.06 | | |
| 1/1/2020 | 5 | | $1,995.96 | $1,333.33 | $195.57 | | $467.06 | | |
| 2/1/2020 | 6 | | $1,995.96 | $1,333.33 | $195.57 | | $467.06 | | |
| 3/1/2020 | 7 | | $1,995.96 | $1,333.33 | $195.57 | | $467.06 | | |
| 4/1/2020 | 8 | | $1,995.96 | $1,333.33 | $195.57 | | $467.06 | | |
| 5/1/2020 | 9 | | $1,995.96 | $1,333.33 | $195.57 | | $467.06 | | |
| 6/1/2020 | 10 | | $1,995.96 | $1,333.33 | $195.57 | | $467.06 | | |
| 7/1/2020 | 11 | | $1,995.96 | $1,333.33 | $195.57 | | $467.06 | | |
| 8/1/2020 | 12 | 8 at | $1,995.96 8 at | $1,333.33 | $195.57 | | $467.06 | | |
| 9/1/2020 | 13 | | $662.63 | | $195.57 | | $467.06 | | |
| 10/1/2020 | 14 | | $662.63 | | $195.57 | | $467.06 | | |
| 11/1/2020 | 15 | | $1,662.63 | | $195.57 | | $467.06 | | |
| 12/1/2020 | 16 | | $662.63 | | $195.57 | | $467.06 | | |
| 1/1/2021 | 17 | | $662.63 | | $195.57 | | $467.06 | | |
| 2/1/2021 | 18 | | $1,662.63 | | $195.57 | | $467.06 | | |
| 3/1/2021 | 19 | | $662.63 | | $195.57 | | $467.06 | | |
| 4/1/2021 | 20 | | $662.63 | | $195.57 | | $467.06 | | |
| 5/1/2021 | 21 | | $1,662.63 | | $195.57 | | $467.06 | | |
| 6/1/2021 | 22 | | $662.63 | | $195.57 | | $467.06 | | |
| 7/1/2021 | 23 | | $662.63 | | $195.57 | | $467.06 | | |
| 8/1/2021 | 24 | | $1,662.63 | | $195.57 | | $467.06 | | |
| 9/1/2021 | 25 | | $662.63 | | $195.57 | | $467.06 | | |
| 10/1/2021 | 26 | | $662.63 | | $195.57 | | $467.06 | | |
| 11/1/2021 | 27 | | $1,662.63 | | $195.57 | | $467.06 | | |
| 12/1/2021 | 28 | | $662.63 | | $195.57 | | $467.06 | | |
| 1/1/2022 | 29 | | $662.63 | | $195.57 | | $467.06 | | |
| 2/1/2022 | 30 | | $1,662.63 | | $195.57 | | $467.06 | | |
| 3/1/2022 | 31 | | $662.63 | | $195.57 | | $467.06 | | |
| 4/1/2022 | 32 | | $662.63 | | $195.57 | | $467.06 | | |
| 5/1/2022 | 33 | | $1,662.63 | | $195.57 | | $467.06 | | |
| 6/1/2022 | 34 | | $662.63 | | $195.57 | | $467.06 | | |
| 7/1/2022 | 35 | 16 at | $662.63 | | $195.57 | | $467.06 | | |
| 8/1/2022 | 36 | 8 at | $1,662.63 | | 36 at $195.57 | 36 at | $467.06 | | |
| | | | | | | | | | **Total Admin/Secured** |
| **TOTAL** | | | **$47,854.68** | **$16,000.00** | **$7,040.52** | | **$16,814.16** | | **$39,854.68** |
| | | | | | | | | | |
| **TOTAL DUE** | | | **$5,041.80** | **$16,000.00** | **$6,624.13** | | **$16,000.00** | | |
| | | | | | | | | | |
| | **Unsecureds Receive** | | **$8,000.00** | **Total Required to Be Paid** | | | **$43,665.93** | | |

# EXHIBIT F

**Claims Breakdown**

**Ortman Creditor List**

| | Total Amount | Claim # | Priority Amt | Secured Amt | Gen Unsecured Amt | Proposed Amt | Pro Rata Share | Amt to Receive |
|---|---|---|---|---|---|---|---|---|
| Capital One Bank (USA), N.A. by American InfoSource LP as agent | $392.91 | 1 | | | $392.91 | $392.91 | $6.86 | $0.00 |
| OneMain | $8,638.50 | 2 | | | $8,638.50 | $8,638.50 | $150.85 | $151.05 |
| IRS | $197,194.30 | 3-2 | | $6,624.13 | $190,570.17 | $190,570.17 | $3,327.87 | $3,332.21 |
| Vystar Credit Union | $4,712.81 | 4 | | | $4,712.81 | $4,712.81 | $82.30 | $82.41 |
| Julington Creek Plantation POA, Inc. | $4,072.47 | 5 | | $4,072.47 | $0.00 | $4,072.47 | $71.12 | $71.21 |
| Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not Individually but as Trustee for Carlsbad Funding Mortgage Trust | $586,138.84 | 6 | | $586,138.84 | $0.00 | $228,193.84 | $3,984.89 | $3,990.08 |
| Carbucks of Georgia, Inc. | $28,000.00 | NCF | | $16,000.00 | $12,000.00 | $12,000.00 | $209.55 | $209.83 |
| Titlemax Loans, LLC | $2,665.00 | NCF | | $2,665.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Ameriprise Financial Service | $471,226.42 | NCF | | | $471,226.42 | $0.00 | $0.00 | $0.00 |
| ERC/Enhanced Recovery Corp. | $203.00 | NCF | | | $203.00 | $203.00 | $3.54 | $0.00 |
| Portfolio Recovery Associate | $7,560.00 | NCF | | | $7,560.00 | $7,560.00 | $132.02 | $132.19 |
| Portfolio Recovery Associate | $1,775.00 | NCF | | | $1,775.00 | $1,775.00 | $31.00 | $31.04 |
| **TOTAL** | $1,312,579.25 | | $0.00 | $615,500.44 | $697,078.81 | $458,118.70 | $8,000.00 | **$8,000.00** |
| | | | | | | $457,522.79 | | |